# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

BOB LEWIS,

                    Plaintiff,

          v.

GOOGLE, INC., et al.,

                    Defendants.

Case No. 1:19-cv-2387-WJM-KLM

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

ARGUMENT .................................................................................................................. 5

   I.       Plaintiff Has No First Amendment Claim (First Cause of Action) ............................. 6

   II.      Plaintiff Has No Civil Rights Act Claim (Second Cause of Action)........................... 9

   III.     Plaintiff Has No Standing To Assert Claims Relating to the Communications Decency Act (Third and Eighth Causes of Action) ................................................... 12

   IV.    Plaintiff Has Not Pled Fraud (Fourth Cause of Action) ............................................ 14

   V.     Plaintiff Cannot State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Fifth Cause of Action) ........................................................................ 16

   VI.    Defendants' Terms of Service User Agreement Is Not an Unconscionable Contract (Sixth Cause of Action) ........................................................................................... 17

   VII.   Plaintiff Has Not Pled a Lanham Act Violation (Seventh Cause of Action) ............. 19

   VIII.   Plaintiff Fails To Plead Tortious Interference with Economic Advantage (Ninth Cause of Action) ....................................................................................................... 21

   IX.    Plaintiff Is Not Entitled to Declaratory Relief  (Tenth Cause of Action)................... 23

   X.     Plaintiff's Claims Are Barred by Section 230 of the CDA ........................................ 23

# TABLE OF AUTHORITIES

## CASES

*Argentina v. Gillette*,
    778 F. App'x 173 (3d Cir. 2019) (per curiam) ......................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................5, 6

*Avidity Partners, LLC v. California*,
    165 Cal. Rptr. 3d 299 (Cal. Ct. App. 2013) ......................................................17

*Baldino's Lock & Key Serv., Inc. v. Google, LLC*,
    285 F. Supp. 3d 276 (D.D.C. 2018) ..................................................................24

*Baltazar v. Forever 21, Inc.*,
    367 P.3d 6 (Cal. 2016) ......................................................................................18

*Bangert Bros. Constr. Co. v. Kiewit W. Co.*,
    310 F.3d 1278 (10th Cir. 2002) ........................................................................15

*Ben Ezra, Weinstein, & Co. v. AOL*,
    206 F.3d 980 (10th Cir. 2000) ....................................................................23, 25

*Bennett v. Google, LLC*,
    882 F.3d 1163 (D.C. Cir. 2018) ........................................................................24

*Brill v. Correct Care Solutions, LLC*,
    286 F. Supp. 3d 1210 (D. Colo. 2018)................................................................8

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
    861 F.3d 1081 (10th Cir. 2017) ..........................................................................3

*Brown v. Buhman*,
    822 F.3d 1151 (10th Cir. 2016) ........................................................................12

*Campos v. JPMorgan Chase Bank, NA*,
    2019 WL 927634 (N.D. Cal. Feb. 21, 2019) ....................................................18

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    826 P.2d 710 (Cal. 1992) (en banc) ..................................................................17

*Casterlow-Bey v. Google Internet Search Engine Co.*,
    2017 WL 6876215 (W.D. Wash. Sept. 26, 2017)................................................7

*Colo. Outfitters Ass'n v. Hickenlooper*,
    823 F.3d 537 (10th Cir. 2016) ..........................................................................13

*Crown Imps., LLC v. Superior Court*,
    168 Cal. Rptr. 3d 228 (Cal. Ct. App. 2014) ....................................................21, 22

*Cyber Promotions, Inc. v. AOL*,
    948 F. Supp. 436 (E.D. Pa. 1996) .............................................................................7

*Darnaa, LLC v. Google, Inc.*,
    2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) .........................................................24

*Davison v. Facebook, Inc.*,
    370 F. Supp. 3d 621 (E.D. Va. 2019) .......................................................................7

*DC Auto., Inc. v. Kia Motors Am., Inc.*,
    No. 19-cv-318-PAB, 2019 WL 4192112 (D. Colo. Sept. 4, 2019) ........................17

*Fehrenbach v. Zeldin*,
    2018 WL 4242452 (E.D.N.Y. Aug. 6, 2018)............................................................7

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019) ......................................................................7, 12

*Getachew v. Google, Inc.*,
    491 F. App'x 923 (10th Cir. 2012) ....................................................................23, 24

*Getachew v. Google, Inc.*,
    No. 12-cv-896-BNB, 2012 WL 12949353 (D. Colo. May 17, 2012).................23, 24

*Graham v. Scissor-Tail, Inc.*,
    623 P.2d 165 (Cal. 1981) (en banc) .......................................................................18

*Green v. AOL*,
    318 F.3d 465 (3d Cir. 2003).............................................................................6, 14

*Hardy v. Flood*,
    No. 17-cv-677-CMA, 2018 WL 1035085 (D. Colo. Feb. 23, 2018) .......................15

*Harris Grp. v. Robinson*,
    209 P.3d 1188 (Colo. App. 2009) ...........................................................................22

*Howard v. AOL*,
    208 F.3d 741 (9th Cir. 2000) ...................................................................................7

*Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*,
    962 P.2d 983 (Colo. App. 1997)..............................................................................18

*Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*,
    638 F. App'x 778 (10th Cir. 2016) ..........................................................................20

*Janus v. AFSCME, Council 31*,
    138 S. Ct. 2448 (2018) ........................................................................................9

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .....................................................................23, 24

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ........................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ...................................................................................22

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) .................................................................14

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ........................................................................................19

*Lincoln Gen. Ins. Co. v. Bailey*,
    224 P.3d 336 (Colo. App. 2009) ........................................................................18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................13

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ......................................................................................6

*Matthews v. YMCA*,
    2005 WL 2663218 (D. Kan. Oct. 19, 2005) ..........................................................10

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) .............................................................15, 16

*Noah v. AOL Time Warner Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003) ...........................................................7, 11, 24

*Nyabwa v. Facebook*,
    2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ...........................................................7

*Occusafe, Inc. v. EG&G Rocky Flats, Inc.*,
    54 F.3d 618 (10th Cir. 1995) .............................................................................22

*Parker v. Google, Inc.*,
    422 F. Supp. 2d 492 (E.D. Pa. 2006) ..................................................................25

*Parker v. Metro. Life Ins. Co.*,
    121 F.3d 1006 (6th Cir. 1997) (en banc) ..............................................................12

iv

*Peoples v. Discover Fin. Servs., Inc.*,
 387 F. App'x 179 (3d Cir. 2010) ...................................................................12

*Pirtle v. Allsup's Convenience Store, Inc.*,
 2003 WL 27385258 (D.N.M. Apr. 2, 2003) ....................................................10

*Prager Univ. v. Google LLC*,
 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018)...........................................7, 20, 21

*Prager Univ. v. Google LLC*,
 No. 19CV340667, slip op. (Cal. Super. Ct. Nov. 19, 2019) ....................................14

*Price v. Socialist People's Libyan Arab Jamahiriya*,
 294 F.3d 82 (D.C. Cir. 2002) ....................................................................9

*Rendell-Baker v. Kohn*,
 457 U.S. 830 (1982)..............................................................................8

*Robinette v. Schirard*,
 No. 10-cv-2172-CMA, 2014 WL 12649011 (D. Colo. Feb. 11, 2014) ..........................15

*Shah v. MyLife.com, Inc.*,
 2012 WL 4863696 (D. Or. Sept. 21, 2012) .....................................................7

*Shulman v. Facebook.com*,
 2017 WL 5129885 (D.N.J. Nov. 6, 2017) ........................................................7

*Sikh for Justice, Inc. v. Facebook, Inc.*,
 697 F. App'x 526 (9th Cir. 2017) ..............................................................24

*Silva v. US Bank, Nat'l Assoc.*,
 294 F. Supp. 3d 1117 (D. Colo. 2018)............................................................8

*Silver v. Quora, Inc.*,
 666 F. App'x 727 (10th Cir. 2016) ..........................................................23, 24

*Sooner Prods. Co. v. McBride*,
 708 F.2d 510 (10th Cir. 1983) ..................................................................7

*Starbucks Corp. v. Superior Court*,
 86 Cal. Rptr. 3d 482 (Cal. Ct. App. 2008).......................................................15

*Tompkins v. 23andMe, Inc.*,
 2014 WL 2903752 (N.D. Cal. June 25, 2014).....................................................18

*United States v. Ramos*,
 695 F.3d 1035 (10th Cir. 2012) .................................................................12

*Universal Commc'n Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ............................................................24

*Wardley Corp. v. Meredith Corp.*,
    93 F. App'x 183 (10th Cir. 2010) ....................................................16

*Warnick v. Cooley*,
    895 F.3d 746 (10th Cir. 2018) ..........................................................6

*Weerahandi v. Shelesh*,
    2017 WL 4330365 (D.N.J. Sept. 29, 2017) ....................................24

*Welsh v. Boy Scouts of Am.*,
    993 F.2d 1267 (7th Cir. 1993) ........................................................11

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ........................................................12

*White v. Denny's Inc.*,
    918 F. Supp. 1418 (D. Colo. 1996)..................................................10

*Wittner v. Banner Health*,
    720 F.3d 770 (10th Cir. 2013) ..........................................................8

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
    450 F.3d 1132 (10th Cir. 2006) ......................................................20

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010).................................7

*Ysursa v. Pocatello Educ. Ass'n*,
    555 U.S. 353 (2009).........................................................................9

*Zeran v. AOL*,
    129 F.3d 327 (4th Cir. 1997) ....................................................23, 24

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .............................................................................9

## STATUTORY PROVISIONS

42 U.S.C. § 2000a.....................................................................9, 11, 12

42 U.S.C. § 2000a-3............................................................................10

42 U.S.C. § 12181...............................................................................12

47 U.S.C. § 230...............................................................12, 13, 23, 24, 25

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 208 ........................................................................ 18

*Webster's Third New International Dictionary* 1442 (2002) ........................................................ 1

## INTRODUCTION

This lawsuit seeks five billion dollars in punitive damages and a broad injunction against Defendants taking action to remove, or restrict third party advertising in connection with, any videos on Plaintiff's YouTube channel, "Misandry Today."[1]  Conspicuously missing from Plaintiff's prolix Second Amended Complaint ("SAC") are critical contractual terms and/or YouTube policies and guidelines that provide that Plaintiff has no right to have advertisements run on his YouTube channel, allow YouTube to remove objectionable content from the YouTube service, and outline specific types of content that YouTube will not run advertisements in connection with because YouTube deems such content not appropriate for advertising.  In short, Plaintiff has no legal right to compel Defendants to surface advertisements from third parties who participate in Google's advertising network in connection with videos shown on Plaintiff's YouTube channel.

The videos at issue are monologues in which Plaintiff addresses a variety of topics, including in some instances profane and vulgar comments.   All but one of the videos he calls out were demonetized for violating YouTube's Advertiser-Friendly Content Guidelines, but may still be found on Plaintiff's YouTube channel.  The other video was removed altogether for violating YouTube's Community Guidelines.

Notwithstanding that YouTube is contractually permitted to remove videos and refuse to monetize videos, the SAC includes a litany of unfounded factual allegations and meritless legal claims.  For example, Plaintiff alleges that Defendants' actions constitute state action because they are the product of a joint enterprise between Google and a host of national governments, including China and the European Union.  Plaintiff makes similarly conclusory allegations that

---

[1] Misandry is defined as a "hatred of men."  *Webster's Third New International Dictionary* 1442 (2002).

Defendants somehow algorithmically targeted his YouTube channel to limit others from discovering it (though a simple search for "Misandry Today" on Google's search engine or YouTube search produces links to Plaintiff's website and/or YouTube channel, both of which include Plaintiff's video content). From these baseless allegations, Plaintiff brings a case premised upon the notion that he has a legal entitlement to have video content that he claims is protected by the First Amendment published on YouTube, monetized with advertisements, and promoted in search results.

Plaintiff has no such legal right. First, Plaintiff has no First Amendment claim because Defendants are private parties, not state actors bound by the First Amendment. Second, Plaintiff has not stated a Civil Rights Act claim because he has not alleged any discriminatory action by Defendants, and cannot establish that YouTube is a place of public accommodation under the Civil Rights Act. Third, Plaintiff does not have standing to sue Defendants regarding the constitutionality of the Communications Decency Act ("Section 230" or "CDA"). Fourth, Plaintiff has not pleaded facts to support claims for fraud, breach of the implied covenant of good faith and fair dealing, or tortious interference with economic advantage. Fifth, Plaintiff's claim that the YouTube Terms of Service are unconscionable should be dismissed because Plaintiff has not identified any term that is, in fact, unconscionable or otherwise the cause of his alleged injury. Sixth, Plaintiff's Lanham Act claim fails because he has no standing to bring this claim and has not alleged any false or misleading representations of fact. Lastly, because Plaintiff's SAC has failed to plead any statutory or common law claim, he is not entitled to

declaratory relief.  And even if Plaintiff could plead any of these claims, the CDA provides

Defendants with immunity from such claims as a matter of law.[2]

## FACTUAL BACKGROUND

Plaintiff alleges that he is a "patriotic American citizen who supports American tradition

and culture."  SAC ¶ 1.  He further alleges that he is a "societal, cultural, and political

commentator" who owns and operates the website MisandryToday.com and is the author of the

*Feminist Lie, It Was Never About Equality*.  *Id.* ¶ 16.  Plaintiff registered as a user of YouTube's

service on or about August 13, 2016, and agreed to the YouTube Terms of Service.  *Id.* ¶¶ 81,

118, 245; *see id.* Ex. S.[3]  Plaintiff also created a YouTube channel called "Misandry Today," and

agreed to the YouTube Partner Program Terms, which govern advertising on YouTube.  *Id.*

¶¶ 119, 245.

YouTube's Community Guidelines are expressly incorporated into the Terms of Service,

and set forth specific guidelines regarding content subject to removal from YouTube.  *Id.* Ex. S

¶ 1.  The YouTube Partner Program Terms provide that YouTube is not obligated to display

advertisements alongside any particular video displayed on Plaintiff's YouTube channel.  *See*

SAC ¶ 245.[4]  YouTube's Advertiser-Friendly Content Guidelines delineate content that is not

---

[2] Pursuant to WJM Revised Practice Standard III.D.1, undersigned counsel has previously stipulated to Plaintiff's filing a Second Amended Complaint, and has determined that notwithstanding the Plaintiff's three consecutive efforts to plead actionable claims, no further revision of Plaintiff's complaint can cure the fundamental *legal* deficiencies therein.

[3] The Exhibits cited in the SAC are attached to the Complaint filed on August 22, 2019.

[4] The Community Guidelines, YouTube Partner Program Terms, and Advertiser-Friendly Content Guidelines are appended as exhibits to the Declaration of Jorge Blanco Cano.  "A district court may . . . consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (internal quotation marks omitted).  In his SAC, Plaintiff acknowledges having entered into various contracts with YouTube to provide "YouTube access, hosting, streaming, advertising

suitable for advertising, including content that contains inappropriate language, violence,

sexually explicit content, drug-related content, and controversial issues and sensitive events.[5]

   This lawsuit stems from Plaintiff's dissatisfaction with how YouTube has exercised its

rights under the aforementioned agreements.  First, between December 2018 and March 2019,

YouTube determined that certain videos posted on Plaintiff's Misandry Today YouTube channel

were not eligible for monetization. Those titles included:

- Overthrowing Democracy By Any Means Necessary
- The SPLC [Southern Poverty Law Center] Finances Terrorists
- American Values Are Haram
- Antifa Exposed: Identification & Tactics
- Antifa Exposed: Astroturf Activism & Infiltration of Silicon Valley, DOJ & White House
- The Roy Moore Story Is A Symptom Of A Larger Fraud
- The Truth Behind The Steve King Witchhunt: Targeting Trump
- Antifa Now Targets Children
- Necessary Medicine is A Bitter Pill To Swallow
- A Deep Dive Into YouTube's New Edits & Their Far Reaching Implications
- Outrage Mob Finally Gets Held Accountable: Gavin McInness Lawsuit (1/3)
- Her Story: Why Wouldn't The Husband Pay?
- A Scorched Earth Case Study
- The Smollet Case: What Everyone Missed

---

and/or ad revenue share services" to Plaintiff.  SAC ¶ 245; *see also id.* ¶ 83 (referencing the YouTube Terms of Service).  He also references YouTube guidelines that set forth content restrictions on videos that may be published on YouTube.  *Id.* ¶ 84 (referencing YouTube's Community Guidelines).

[5] Certain content that does not violate YouTube's Community Guidelines may nonetheless violate the Advertiser-Friendly Content Guidelines.  This content may be published on YouTube, but advertisements are not run in connection with these videos.  YouTube restricts advertising around such content because at least some advertisers have expressed an unwillingness to have advertisements associated with this sort of content.

*Id.* ¶¶ 126–37, 146–61.  Second, in March 2019, YouTube removed a video that Plaintiff had posted about the New Zealand Christchurch attacks,[6] and demonetized the entire Misandry Today YouTube channel.  *Id.* ¶¶ 167–68.

In addition to complaints about demonetization, Plaintiff also makes a slew of allegations regarding so-called "blacklists" that allow Defendants to "shadow ban" or otherwise censor and demote video and other online content.  *Id.* ¶¶ 171–72.  Plaintiff alleges "[o]n information and belief, GOOGLE uses Twiddler to unethically and wrongfully demote and conceal YouTube videos and Adsense enabled websites to defraud Video content creators, including, but not limited to LEWIS, of ad revenue."  *Id.* ¶ 177.  That these allegations are purportedly made "upon information and belief" dispel any notion that they are rooted in facts; but even if they were, Plaintiff's allegations are not tied to any particular action taken against him.  The SAC does not identify a single video that allegedly was demoted or concealed in any Google or YouTube search results.  In fact, a search for Plaintiff's website or YouTube channel on Google's search engine or YouTube search immediately surfaces Plaintiff's website, YouTube channel, and/or videos.

## ARGUMENT

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "If . . . a plaintiff's 'well-pleaded facts do not permit the

---

[6] That video, entitled "The NZ Shooting Smells Like a False Flag," was posted on March 16, 2019, the day after the Christchurch, New Zealand shootings that killed over 50 people.  The video was removed because it violated YouTube's Community Guidelines, and its prohibition against content that glorifies violent criminal organizations or incites violent acts against individuals or a defined group of people.  *See* SAC Ex. BP.

court to infer more than the possibility of misconduct,' the complaint fails to state a claim." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).  In particular, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not count as well-pleaded facts sufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Because Defendants' alleged actions to remove or demonetize Plaintiff's videos were legally permissible, they cannot provide a basis for the causes of action pleaded in the SAC.  Plaintiff's conclusory allegations regarding limiting discovery of his videos and unsubscribing YouTube channel subscribers similarly provide no basis for any claim.  The SAC should be dismissed.

## I.    Plaintiff Has No First Amendment Claim (First Cause of Action)

Plaintiff's Section 1983 claim is premised upon the notion that his First Amendment rights have been violated by actions taken by Defendants allegedly in conjunction with foreign governments and the U.S. government.  Plaintiff claims that the state action element for a First Amendment claim has been met based on conduct allegedly engaged in by (1) the People's Republic of China, the European Union, the signatory countries of the Christchurch Call agreement, and (2) Defendants, as agents and joint enterprise collaborators with these foreign governments.  SAC ¶ 5.  The SAC additionally alleges that the state action element has been met because Defendants "are pervasively intertwined with the U.S. Government."  *Id.* ¶ 217.  Plaintiff's claim fails for multiple reasons.

The First Amendment "prohibits only *governmental* abridgment of speech" and "does not prohibit *private* abridgment of speech."  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  Courts have consistently held that online providers are not state actors when regulating content on their platforms.  *See, e.g.*, *Green v. AOL*, 318 F.3d 465, 472 (3d Cir. 2003) (AOL is not "transformed" into a state actor by "provid[ing] a connection to the Internet on

which government and taxpayer-funded websites are found" or "open[ing] its network to the

public"); *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000) (AOL is not an "instrument or

agent" of the government and thus not a state actor subject to the First Amendment).[7]  Plaintiff

has pleaded no facts to support the notion that Defendants worked in collusion with foreign

governments or the U.S. government to demonetize or remove any video content on Plaintiff's

YouTube channel.  Wholly conclusory assertions of some "joint enterprise" is no basis to

convert Defendants' conduct, taken in connection with private agreements between the parties,

into "state action" subject to the First Amendment.  *See Sooner Prods. Co. v. McBride*, 708 F.2d

510, 512 (10th Cir. 1983) (for plaintiffs asserting state action, "mere conclusory allegations with

no supporting factual averments are insufficient; the pleadings must specifically present facts

---

[7] Federal district courts are in accord.  *See Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) (dismissing First Amendment claims against Facebook, Google, and Twitter); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va. 2019) ("Facebook cannot be deemed a state actor," and therefore "Facebook has, as a private entity, the right to regulate the content of its platforms as it sees fit"), *aff'd per curiam*, 774 F. App'x 162 (4th Cir. Aug. 7, 2019); *Fehrenbach v. Zeldin*, 2018 WL 4242452, at *2–3 (E.D.N.Y. Aug. 6, 2018) (dismissing claims against Facebook for failure to establish that Facebook is a state actor), *R. & R. adopted*, 2018 WL 4242453 (E.D.N.Y. Sept. 5, 2018); *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) ("[C]ourts have declined to treat . . . private social media corporations, as well as online service providers, as state actors."); *Nyabwa v. Facebook*, 2018 WL 585467, at *1–2 (S.D. Tex. Jan. 26, 2018) (dismissing claims against Facebook for failure to establish that Facebook is a state actor); *Shulman v. Facebook.com*, 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (same); *Casterlow-Bey v. Google Internet Search Engine Co.*, 2017 WL 6876215, at *1–2 (W.D. Wash. Sept. 26, 2017) (holding that Google is not a state actor), *R. & R. adopted*, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017); *Shah v. MyLife.com, Inc.*, 2012 WL 4863696, at *4 (D. Or. Sept. 21, 2012) (holding that Google is not a state actor), *R. & R. adopted*, 2012 WL 4863271 (D. Or. Oct. 11, 2012); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *2–3 (N.D. Cal. Oct. 25, 2010) (holding that Facebook is not a state actor); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 546 (E.D. Va. 2003) (there is no "evident basis" for the argument that AOL is a state actor), *aff'd per curiam*, 2004 WL 602711 (4th Cir. Mar. 24, 2004); *Cyber Promotions, Inc. v. AOL*, 948 F. Supp. 436, 441–45 (E.D. Pa. 1996) (rejecting argument that AOL is a state actor).

tending to show agreement and concerted action"); *Silva v. US Bank, Nat'l Assoc.*, 294 F. Supp. 3d 1117, 1133 (D. Colo. 2018).

Plaintiff also fails to plead that Defendants are converted into state actors by virtue of their alleged "pervasive[] intertwine[ment] with the U.S. Government."  SAC ¶ 217.  Plaintiff's sole support consists of allegations as to Defendants' provision of various services to the U.S. government, none of which is alleged to have any link to Defendants' enforcement of their monetization or content policies for YouTube videos.  *See id.* ¶¶ 196–99.  This falls well short of what is required for state action.  As the Supreme Court has explained, acts of private parties "do not become acts of the government" even when the private parties have "significant or even total engagement in performing public contracts."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982); *see also Wittner v. Banner Health*, 720 F.3d 770, 778 (10th Cir. 2013) (entwinement requires more than "payments under government contracts" (internal quotation marks omitted)).  Instead, "[u]nder the . . . entwinement test, a private entity is deemed to be a state actor where the state 'has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity.'"  *Brill v. Correct Care Solutions, LLC*, 286 F. Supp. 3d 1210, 1216 (D. Colo. 2018) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447, 1451 (10th Cir. 1995)).  Nothing like that is alleged here, nor could it be.  Plaintiff has not pleaded that Defendants' relationship with the state went beyond "performing public contracts," *Rendell-Baker*, 457 U.S. at 841, much less that Defendants' purported relationship to the U.S. government had any connection whatsoever to "the challenged activity," *Brill*, 286 F. Supp. 3d at 1216.

Plaintiff's claim with respect to the foreign governments also fails because the First Amendment does not apply to foreign governments.  The First Amendment provides that

"*Congress* shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I (emphasis added).  No constitutional amendment or judicial doctrine has ever purported to render the protections guaranteed by the Bill of Rights applicable to a foreign government, much less private parties purportedly acting in concert with a foreign government.  Indeed, applying the U.S. Constitution to foreign governments, "who are entirely alien to our constitutional system," is repugnant to any sound constitutional theory.  *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002).

Finally, while the absence of state action is fatal, Plaintiff also has not alleged facts demonstrating the abridgment of his right to free speech.  Plaintiff alleges that he lost the ability to monetize videos through advertising on YouTube.  But Plaintiff has no First Amendment right to have any video monetized on YouTube.  As the Supreme Court has held, while "[t]he First Amendment . . . protects the right to be free from government abridgement of speech . . . [the government] is not required to assist others in funding the expression of particular ideas, including political ones."  *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009).[8]

## II.    Plaintiff Has No Civil Rights Act Claim (Second Cause of Action)

Plaintiff's Second Cause of Action under Title II of the Civil Rights Act fails because it does not come close to alleging that Defendants discriminated against Plaintiff "on the grounds of . . . national origin" or that Defendants did so in any "place of public accommodation."  42 U.S.C. § 2000a(a).[9]  To establish a prima facie case of discrimination under the Civil Rights Act,

---

[8] Compelling Defendants to show advertisements with Plaintiff's videos, and thus assist in subsidizing these videos, would itself raise serious constitutional concerns, implicating Defendants' own First Amendment rights against compelled speech.  *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018) ("Compelling a person to *subsidize* the speech of other private speakers raises similar First Amendment concerns.").

[9] This claim also is barred because Plaintiff failed to give "written notice of such alleged [discriminatory] act or practice . . . to the appropriate State or local authority" and wait thirty

Plaintiff must show that Defendants engaged in "intentional discrimination" or acted with "discriminatory animus." *Matthews v. YMCA*, 2005 WL 2663218, at *5 (D. Kan. Oct. 19, 2005) (citation omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 (3d Cir. 2019) (per curiam) (affirming dismissal of 2000a claim because plaintiff "failed to set forth any allegations giving rise to an inference of an intent to discriminate" (internal quotation marks omitted)); *Pirtle v. Allsup's Convenience Store, Inc.*, 2003 WL 27385258, at *3–4 (D.N.M. Apr. 2, 2003) (applying "intent to discriminate" standard to § 2000a).

Plaintiff has pleaded no facts to support the conclusory (and facially absurd) allegation that Defendants took action against various videos due to Plaintiff's national origin as "a patriotic American citizen who supports American tradition and culture." SAC ¶ 1. Indeed, Plaintiff pleads no facts that purport to connect any action taken by Defendants with Plaintiff's national origin. Nor is there any plausible allegation that the non-discriminatory reasons given for the action were pretextual. In fact, nowhere does Plaintiff allege that Defendants even knew Plaintiff's identity, much less his national origin. Without any connection between Plaintiff's national origin, the subject matter of the videos at issue, and Defendants' conduct, Plaintiff has not pled intentional discrimination based on national origin.

The SAC confirms that Defendants took action not based on an intent to discriminate against Plaintiff based on national origin, but rather because Plaintiff's videos violated YouTube's content policies and advertising guidelines. Indeed, Plaintiff nowhere pleads facts contesting that the video content at issue violates the prohibitions set forth in those policies and

---

days before initiating an action pursuant to Title II of the Civil Rights Act. 42 U.S.C. § 2000a-3(c); *see White v. Denny's Inc.*, 918 F. Supp. 1418, 1423 (D. Colo. 1996).

guidelines.  The SAC offers no basis to infer that enforcement of these policies and guidelines was a pretextual effort to discriminate against Plaintiff's American origin.

Last, Plaintiff's Civil Rights Act claim fails to plead facts establishing that YouTube is a "place of public accommodation" under the statute.  Plaintiff alleges that YouTube is "an online theater and/or a place of public exhibition or entertainment."  SAC ¶ 221.  However, the statutory definition of "places of public accommodation" clearly intends its scope to be limited to *physical* spaces, and YouTube's online platform is not a "physical place."

Under the Civil Rights Act, a "place of public accommodation" includes, inter alia, "(3) any motion picture house, theater, concert hall, sports arena, stadium or other places of exhibition or entertainment; and (4) any establishment . . . which is *physically located* within the *premises* of any establishment . . . covered by this subsection."  47 U.S.C. § 2000a(b) (emphasis added).  Plaintiff's proposed construction of the statutory definition would essentially render meaningless clause 4 of the definition because no establishment could be "physically located within the premises" of Defendants' websites.  Consistent with the statutory text, courts have limited the scope of public accommodations under Title II to physical places.  *See, e.g.*, *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1269–70 (7th Cir. 1993) ("Congress focused on physical facilities" in determining the reach of Title II of the Civil Rights Act); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540–45 (E.D. Va. 2003) (internet chatrooms are not "places of public accommodation" because "it is clear that the reach of Title II, however broad, cannot extend beyond actual physical facilities"), *aff'd per curiam*, 2004 WL 602711 (4th Cir. Mar. 24, 2004).

Plaintiff's support for his interpretation of the Civil Rights Act rests on the unsettled definition of "places of public accommodation" under the Americans with Disabilities Act

("ADA"), which provides a different statutory definition of the term.  *Compare* 42 U.S.C. §

12181(7) (ADA definition) *with* 47 U.S.C. § 2000a(b) (Civil Rights Act definition).  Even under

the ADA, however, multiple federal Courts of Appeal have held that a "place of public

accommodation" requires a physical place.  *See, e.g.*, *Peoples v. Discover Fin. Servs., Inc.*, 387

F. App'x 179, 183 (3d Cir. 2010); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104,

1114 (9th Cir. 2000); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en

banc).  This Court need not enter that debate because the ADA is not implicated in this case.  *See*

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 39 (D.D.C. 2019) (finding online

providers' platform services, including YouTube, are not places of public accommodation within

the meaning of the D.C. Human Rights Act, and rejecting plaintiffs' reliance on an "unsettled

interpretation about an unrelated statute" (the ADA)).

### III.   Plaintiff Has No Standing To Assert Claims Relating to the Communications Decency Act (Third and Eighth Causes of Action)

Plaintiff's Third Cause of Action challenges the constitutionality of certain provisions of

the Communications Decency Act, 47 U.S.C. § 230, on the grounds of vagueness, over-breadth,

and internal inconsistency.  SAC ¶¶ 229–31.  The Eighth Cause of Action challenges the

*potential* application of the "good faith" requirement in 47 U.S.C. § 230(c)(2)(a) by Defendants

in this case.  *Id.* ¶¶ 262–63.  These claims fail because Plaintiff cannot affirmatively sue

Defendants to preemptively defeat certain defenses that might be asserted in this case.

"'A party has standing to challenge the constitutionality of a statute only insofar as it has

an adverse impact on his own rights.'"  *United States v. Ramos*, 695 F.3d 1035, 1047 (10th Cir.

2012) (quoting *Cty. Court v. Allen*, 442 U.S. 140, 154–55 (1979)).  Federal courts "are confined

to deciding actual Cases or Controversies," and "have no business deciding legal disputes or

expounding on law in the absence of such a case or controversy."  *Brown v. Buhman*, 822 F.3d

1151, 1163 (10th Cir. 2016) (alterations and internal quotation marks omitted).  Therefore, to

satisfy the standing requirement, Plaintiff must offer "concrete, particularized, and actual or

imminent" injury.  *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016)

(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  An "imminent" injury means that

the injury is "certainly impending."  *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks

omitted).

    Plaintiff does not (and cannot) allege any "concrete, particularized, and actual or

imminent" injury in support of his constitutional challenge to Section 230 or his claim based on

the inapplicability of the "good faith" requirement contained in Section 230(c)(2)(A) because the

statute does not provide for any sanctions that could impact any of Plaintiff's rights.  Instead, the

challenged provisions shield a "provider . . . of an interactive computer service" from liability

under certain circumstances.  The statute does not impose any penalty on Plaintiff; at most, it

potentially impacts Plaintiff's ability to sue service providers like Defendants.  There are no

enforcement or liability provisions that apply to Plaintiff.  Under these circumstances, Plaintiff

has no standing to sue Defendants regarding the constitutionality or applicability of certain

provisions of the CDA.[10]

    Finally, Plaintiff's constitutional challenge to Section 230 is contrary to two unbroken

decades of Section 230 case law—which have consistently applied the immunity to protect

online intermediaries for all manner of editorial judgments in regard to user speech.  Not only

that, Plaintiff's constitutional objection has specifically been rejected by every court to have

---

[10] As explained below, if the Court does not dismiss Plaintiff's claims on other grounds, the
CDA would apply to bar those claims here.  Plaintiff may contest application of the CDA as a
defense to those claims; however, Plaintiff has no standing to pursue an independent cause of
action against Defendants regarding the constitutionality of the statute.

considered it.  In *Green v. AOL*, for example, the Third Circuit held that Section 230 does not

"contravene[] the First Amendment" because it does not "require AOL to restrict speech; rather

it allows AOL to establish standards of decency without risking liability for doing so."  318 F.3d

465, 472 (3d Cir. 2003) (emphasis omitted); *see also Prager Univ. v. Google LLC*, No.

19CV340667, slip op. at 19 (Cal. Super. Ct. Nov. 19, 2019) (application of Section 230 to bar

claims arising from demonetization of and failure to include YouTube videos in a restricted

mode does not violate First Amendment); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981,

994–95 (S.D. Tex. 2017) (rejecting argument that Section 230 unconstitutionally abridged

plaintiff's access to courts).  As these decisions recognize, Section 230 is not government

censorship:  the statute mandates no directive to remove, filter, or limit user speech.  To the

contrary, the statute ensures that those decisions are not in the hands of the government, but

rather are entrusted to private online services.  Congress does not violate the First Amendment

by protecting private parties who seek to moderate third-party speech on their property.

## IV.    Plaintiff Has Not Pled Fraud (Fourth Cause of Action)

In his Fourth Cause of Action, Plaintiff contends that Defendants have committed fraud

by not informing him and others of a laundry list factually unsupported allegations regarding,

among other things, alleged foreign government involvement in content decisions on YouTube

and the alleged use of blacklists of words, websites, users, and/or other material/content.  SAC ¶¶

232–43.  Plaintiff further claims that Defendants presented YouTube as a free speech platform,

free from unlawful censorship.  *Id.* ¶ 233.  In essence, Plaintiff suggests that Defendants misled

Plaintiff by failing to announce that videos could be removed or demonetized based on their

content, or that Defendants used alleged blacklists to demote certain unidentified content.  *Id.* ¶

240.  Plaintiff claims reliance on these alleged omissions to his detriment because videos were

removed or demonetized.  *Id.* ¶ 243.

To plead fraud by omission, Plaintiff must allege five elements:  "(1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013).[11]  Moreover, fraud by omission "must be pled at a heightened standard of specificity per Federal Rule of Civil Procedure 9(b)." *Id.*[12]  Finally, when alleging fraud by omission, Plaintiff is required to plead actual reliance.  *See Starbucks Corp. v. Superior Court*, 86 Cal. Rptr. 3d 482, 489 (Cal. Ct. App. 2008) ("Actual reliance for the purpose of fraud by omission occurs only when the plaintiff reposes confidence in the *material completeness* of the defendants' representations, and acts on this confidence." (brackets and internal quotation marks omitted)).  Plaintiff cannot plead facts to support any of these elements.

Plaintiff has failed to plead the first—and key—element of fraud:  concealment of a material fact.  Any concealment theory in this case is invalid in light of the provisions set forth in the parties' agreements.  The YouTube Partner Program Terms provide that YouTube is not obligated to run advertisements during any video.  YouTube's Advertiser-Friendly Content

---

[11] The YouTube Terms of Service that Plaintiff agreed to are governed by California law.  *See* SAC Ex. S ¶ 14.  Accordingly, Defendants analyze Plaintiff's state law claims under California law.  Colorado treats fraud claims substantively the same, and the analysis would not differ under either state's law.  *See Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1286 n.4 (10th Cir. 2002) (citing *Se. Colo. Water Conservancy Dist. v. Cache Creek Mining Tr.*, 854 P.2d 167, 172 (Colo. 1993) (en banc)); *Robinette v. Schirard*, No. 10-cv-2172-CMA, 2014 WL 12649011, at *9–10 (D. Colo. Feb. 11, 2014), *R. & R. adopted*, 2014 WL 12649009 (D. Colo. Mar. 25, 2014).

[12] The same pleading standards apply in Colorado.  *See Hardy v. Flood*, No. 17-cv-677-CMA, 2018 WL 1035085, at *3 (D. Colo. Feb. 23, 2018) ("Any claim . . . may be subject to Rule 9(b)'s heightened pleading standard if that claim is grounded in fraud." (internal quotation marks omitted)); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (under Rule 9(b), a plaintiff complaining of fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (internal quotation marks omitted)).

Guidelines and Community Guidelines make clear that content can be demonetized and even removed if it violates these policies.  In light of these publicly announced advertising and content limitations, Plaintiff cannot plausibly allege that he was intentionally misled by affirmative statements regarding Defendants' support for free speech rights or supposed omissions regarding foreign government speech regulations, nor can he plead any affirmative reliance on any supposed misstatements.  And Plaintiff alleges no facts to support any duty by Defendants to disclose any facts supposedly withheld from Plaintiff.

Plaintiff's claim of omission regarding Defendants' use of alleged blacklists also fails because Plaintiff has not pled facts establishing that any such alleged blacklists existed, much less that Defendants targeted Plaintiffs' videos for demotion or concealment from others through the use of blacklists.  Without any factual basis for these allegations, Plaintiff cannot plausibly allege fraud for failing to disclose them to Plaintiff.  *See Mui Ho*, 931 F. Supp. 2d at 999.

Plaintiff also cannot plead facts showing that Defendants intended to induce Plaintiff's reliance on any alleged omission, that Plaintiff justifiably relied on any alleged omission, or that Plaintiff was damaged as a result of any alleged omission.  In short, Plaintiff was put on notice that YouTube could decline to monetize any video, that not all types of content was suitable for advertisements, and that videos were subject to removal.  That belies any claim that Plaintiff justifiably relied on Defendants' supposed omissions.  *See Wardley Corp. v. Meredith Corp.*, 93 F. App'x 183, 186–87 (10th Cir. 2010) (affirming the district court's holding that the contract's language precluded any reasonable reliance on representations to the contrary).

### V.     Plaintiff Cannot State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Fifth Cause of Action)

Plaintiff claims Defendants breached the implied covenant of good faith and fair dealing when they "demonetized and/or restricted [his] videos."  SAC ¶ 247.  "The implied covenant of

good faith and fair dealing rests upon the existence of some specific contractual obligation . . . . [It] does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Avidity Partners, LLC v. California*, 165 Cal. Rptr. 3d 299, 320 (Cal. Ct. App. 2013) (internal quotation marks omitted).[13]  Here, Plaintiff offers only the conclusory statement that Defendants were bound "not to engage in any acts, conduct, or omissions that would impair or diminish [Plaintiff's] rights and benefits under the parties' agreements."  SAC ¶ 248.  Plaintiff's failure to identify a "specific contractual obligation" that Defendants allegedly violated dooms this claim.  *Avidity Partners*, 165 Cal. Rptr. 3d at 320 (internal quotation marks omitted).

To the extent Plaintiff contends Defendants failed to act in good faith by demonetizing or removing videos, YouTube's Advertiser-Friendly Content Guidelines make clear that certain content is not appropriate for advertising, and YouTube's Community Guidelines delineate content that YouTube will remove altogether.  *See* SAC ¶ 84.  Courts routinely recognize that the implied covenant of good faith and fair dealing will not "prohibit a party from doing that which is expressly permitted by an agreement."  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992) (en banc).

## VI.     Defendants' Terms of Service User Agreement Is Not an Unconscionable Contract (Sixth Cause of Action)

Plaintiff's Sixth Cause of Action asserts that the YouTube Terms of Service that Plaintiff agreed to in order to become a registered user of YouTube is an unconscionable "adhesion contract[]" because it allows Defendants to change the terms of the contract at will without notice to Plaintiff.  SAC ¶ 253.  As an initial matter, Plaintiff's "claim" of unconscionability should be dismissed because unconscionability cannot form the basis for an affirmative claim;

---

[13] The law governing the implied covenant of good faith and fair dealing is "substantially similar" in California and Colorado.  *See DC Auto., Inc. v. Kia Motors Am., Inc.*, No. 19-cv-318-PAB, 2019 WL 4192112, at *6 n.7 (D. Colo. Sept. 4, 2019).

rather, unconscionability is a defense against contract enforcement.  *See, e.g.*, *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 173 (Cal. 1981) (en banc) ; *see also* Restatement (Second) of Contracts § 208 (Am. Law Inst. 1981) (where a contract, or term thereof, is deemed unconscionable, a court "may refuse to enforce the contract").[14]

Even if Plaintiff attempts to assert unconscionability as a defense to contract enforcement, that defense also would fail.  In order to avoid contract enforcement through an unconscionability argument, Plaintiff must allege more than unequal bargaining power.  *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016) ("[P]rocedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." (brackets and internal quotation marks omitted)); *see also* Restatement (Second) of Contracts § 208, cmt. d (a contract "is not unconscionable merely because the parties to it are unequal in bargaining position").[15]  And courts repeatedly have upheld contracts with unilateral modification clauses.  *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014) (court upholds contract that allowed 23andMe to "modify, supplement or replace" its terms of service contract at any time), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Campos v. JPMorgan Chase Bank, NA*, 2019 WL 927634, at *9 (N.D. Cal. Feb. 21, 2019) (collecting cases in which "California courts have rejected this exact argument" that "Defendant's ability to 'amend, modify, and discontinue the

---

[14] The same is true under Colorado law.  *Lincoln Gen. Ins. Co. v. Bailey*, 224 P.3d 336, 341 (Colo. App. 2009) ("Courts will not enforce an unconscionable contract."), *aff'd en banc*, 255 P.3d 1039 (Colo. 2011).

[15] The same is true under Colorado law.  *See Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (courts consider a host of factors in determining unconscionability, including whether (1) the parties have unequal bargaining power; (2) the party seeking to avoid enforcement lacked an opportunity to read the contract before signing it; (3) the disputed term was hidden in fine print; and (4) the disputed term was commercially unreasonable).

agreement at any time' renders the Agreement illusory and therefore substantively unconscionable").

Plaintiff's unconscionability claim should be dismissed for the separate reason that the provision he challenges has not been used against him to remove or demonetize any video. Plaintiff claims that the term allowing Defendants to "change any of the terms at any time, at will, without notice to [Plaintiff]" is unconscionable.  SAC ¶ 253.  However, the YouTube video content and advertising policies  existed at the time Plaintiff created his YouTube channel. Because the challenged provision is not the source of dispute in this case, Plaintiff's claim fails.

## VII.    Plaintiff Has Not Pled a Lanham Act Violation (Seventh Cause of Action)

Plaintiff's Seventh Cause of Action purports to bring a false advertising claim under the Lanham Act.  Plaintiff alleges that Defendants "engage in an ongoing pattern and practice of knowingly and willfully misleading and deceptive advertisement and unfair competition" by representing that YouTube is "a forum for open and intellectually diverse expression by a variety of speakers/registered users across the globe."  SAC ¶ 259.  This claim fails for multiple reasons.

First, Plaintiff lacks standing to sue because the harm alleged relates to his use of YouTube as a consumer, not as a competitor.  The Supreme Court has squarely held that *consumers*—as opposed to competitors suing for "injuries to business reputation and present and future sales"—are not allowed to bring claims under the Lanham Act.  *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014).  Plaintiff alleges that he "suffered and continues to suffer immediate and irreparable injury in fact, including, but not limited to, lower viewership, decreased/lost ad revenue, a potential reduction in advertisers willing to purchase advertisements that were previously shown on LEWIS's videos, diverted viewership, and damages to LEWIS's brand, reputation, and goodwill."  SAC ¶ 260.  All of these alleged injuries resulted from conduct directed at Plaintiff's YouTube channel, and in his

capacity solely as a consumer or user of Defendants' online platform.  Plaintiff's theory—that he

was effectively "'hoodwinked' by Defendants' representations 'into [using] a disappointing'

video-hosting service (YouTube)"—is exactly what the Lanham Act does not allow.  *Prager*

*Univ. v. Google LLC*, 2018 WL 1471939, at *13 (N.D. Cal. Mar. 26, 2018) (quoting *Lexmark*,

572 U.S. at 132).[16]

      Second, even apart from standing, Plaintiff's Lanham Act claim also fails because the

statements Plaintiff complains of are not "material false or misleading representations of fact,"

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir. 2006)

(internal quotation marks omitted), but constitute "puffery" which is not actionable under the

Lanham Act.  The Tenth Circuit has stated that:

> As the Third Circuit has explained (in a Lanham Act lawsuit), a statement
> of puffery is considered to be offered and understood as an expression of the
> seller's opinion only, which is to be discounted as such by the buyer.  The hallmarks
> of puffery are broad, vague, and commendatory language, as well as subjective
> claims which cannot be proven either true or false.

*Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 786 (10th

Cir. 2016) (alterations, citations, and internal quotation marks omitted).  Here, Defendants'

alleged advertisements of YouTube "as a forum for open and intellectually diverse expression"

are not "false or misleading misrepresentations of fact." *World Wide Association*, 450 F.3d at

1140.  These statements are instead "expression of [Defendants'] opinion" of their services.

*Intermountain*, 638 F. App'x at 787 (internal quotation marks omitted).

      Moreover, these statements are consistent with Defendants' publicly announced

restrictions on content and advertising in connection with certain types of videos.  Having been

---

[16] Plaintiff's single conclusory allegation that Defendants "compete[] with video producers like
LEWIS in the market of online video streaming/viewing by creating, hosting, and promoting
their own content online video content," SAC ¶ 258, is unsupported by any facts.

apprised of Defendants' content policies, Plaintiff has not pled facts establishing that he was the victim of any false, misleading, or deceptive advertisements.  But even if Plaintiff views these as inconsistent goals, that is of no legal relevance for a Lanham Act claim.  As one federal court held in an almost identical Lanham Act challenge to Defendants' statements about their platforms:  "None of the statements . . . resembles the kinds of quantifiable statements about the specific or absolute characteristics of a product that are actionable under the Lanham Act.  Rather, the statements are vague representations about how YouTube is generally committed to fostering a community where everyone's voice can be heard."  *Prager University*, 2018 WL 1471939, at *11 (citation and internal quotation marks omitted).

### VIII.   Plaintiff Fails To Plead Tortious Interference with Economic Advantage (Ninth Cause of Action)

In the Ninth Cause of Action, Plaintiff contends that Defendants tortiously interfered with his "business interests" by "censoring LEWIS on their websites and platforms, from which he has been algorithm censored and demonetized."  SAC ¶ 267.  To state such a claim under California law, Plaintiff must allege:  (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [or negligent] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *See Crown Imps., LLC v. Superior Court*, 168 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2014).   "[T]he alleged interference must have been wrongful by some measure beyond the fact of the interference itself."  *Id.*

Plaintiff has failed to plead a cause of action for tortious interference for numerous reasons.  First, he has not pled facts to suggest that any of Defendants' actions were "wrongful."

*Id.*  For an act to be considered wrongful, it must be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.* (internal quotation marks omitted).  But, as already noted, Defendants' Advertiser-Friendly Content Guidelines and Community Guidelines permit Defendants to demonetize and remove videos that violate those guidelines.  *See* SAC ¶ 84.  And as explained above, Plaintiff has pled no facts to support an allegation that Defendants "algorithm censored" Plaintiff's content with knowledge that such action would interfere with any economic relationship.  Accordingly, Defendants did nothing "wrongful" in enforcing YouTube's advertising and content guidelines.[17]

Second, Plaintiff "must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff."  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 957 (Cal. 2003); *see also Crown Imps.*, 168 Cal. Rptr. 3d at 235 (requiring plaintiff to allege "an economic relationship between the plaintiff and some third party" (internal quotation marks omitted)).  In this case, third-party advertisers contract directly with Google to supply advertisements on YouTube.  When a third party advertisement is shown, the advertiser pays Google, and Google in turn shares a portion of that revenue with the video content creator.  *See* Declaration of Jorge Solano Cano, Attachment A (YouTube Partner Program Terms).  Because Plaintiff has not alleged any direct contractual relationship with any advertiser that was interfered with, his claim fails.[18]

---

[17] So too under Colorado law.  *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 (10th Cir. 1995) ("Under Colorado law, the crucial question in determining liability for tortious interference with prospective financial advantage is whether defendant's interference was intentional and improper." (internal quotation marks omitted)).

[18] Colorado law similarly requires Plaintiff to allege that "improper interference prevented a contract from being formed."  *Harris Grp. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. 2009).

**IX.   Plaintiff Is Not Entitled to Declaratory Relief  (Tenth Cause of Action)**

 For the reasons discussed above, Plaintiff has failed to plead any viable cause of action. Plaintiff's Tenth Cause of Action, seeking declaratory relief, therefore must be dismissed.

**X.   Plaintiff's Claims Are Barred by Section 230 of the CDA**

 If the Court does not dismiss Plaintiff's claims for the reasons set forth above, they should be dismissed because they are barred by Section 230 of the CDA.  47 U.S.C. § 230(c)(1).[19]  Section 230 was enacted "to forbid the imposition of publisher liability on a [computer] service provider for the exercise of its editorial and self-regulatory functions."  *Ben Ezra, Weinstein, & Co. v. AOL*, 206 F.3d 980, 986 (10th Cir. 2000); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (Section 230(c)(1) provides service providers with immunity from liability for claims arising from their performance of "traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content" (internal quotation marks omitted)); *Zeran v. AOL*, 129 F.3d 327, 331 (4th Cir. 1997) (In enacting Section 230, Congress sought "to encourage service providers to self-regulate the dissemination of offensive material over their services" and to "remove disincentives to self-regulation").

 The broad immunity in Section 230(c)(1) applies if "(1) . . . the defendant is a provider or user of an 'interactive computer service;' (2) . . . the asserted claims treat the defendant as the publisher or speaker of the information; and (3) . . . the information is provided by another 'information content provider.'"  *Getachew v. Google, Inc.*, No. 12-cv-896-BNB, 2012 WL 12949353, at *3 (D. Colo. May 17, 2012) (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007) (per curiam)), *aff'd*, 491 F. App'x 923 (10th Cir. 2012); *see also Silver v. Quora, Inc.*, 666 F. App'x 727, 729–30 (10th Cir. 2016) (applying same standard).  If these

---

[19] On this motion Defendants are not seeking dismissal pursuant to CDA Section 230(c)(2), the provision at issue in Plaintiff's Eighth Cause of Action.

elements are satisfied, "[n]o cause of action may be brought and no liability may be imposed

under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3); *see*

*Getachew*, 2012 WL 12949353, at *3 ("Taken together, these provisions bar state-law plaintiffs

from holding interactive computer service providers legally responsible for information created

and developed by third parties." (internal quotation marks omitted)).  Federal courts have also

dismissed claims under the Lanham Act and Title II of the Civil Rights Act based on the broad

immunity in Section 230.  *See, e.g.*, *Sikh for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526,

526 (9th Cir. 2017) ("[W]e have found no authority . . . holding that Title II of the Civil Rights

Act of 1964 provides an exception to the immunity afforded to Facebook under the CDA.");

*Baldino's Lock & Key Serv., Inc. v. Google, LLC*, 285 F. Supp. 3d 276, 280–84 (D.D.C. 2018)

(barring Plaintiff's Lanham Act claim on ground of Section 230); *Noah*, 261 F. Supp. 2d at 538

("[T]here is no question that § 230 bars plaintiff's Title II claim.").[20]

This Court and the Tenth Circuit have applied the CDA to Google, *see, e.g.*, *Getachew*,

2012 WL 12949353, at *3, and courts around the country have also consistently held that both

Google and YouTube qualify as providers of "interactive computer service."  *See, e.g.*, *Bennett v.

Google, LLC*, 882 F.3d 1163, 1167 (D.C. Cir. 2018) ("[A]s many other courts have found,

Google qualifies as an 'interactive computer service' provider . . . ."); *Weerahandi v. Shelesh*,

2017 WL 4330365, at *6 (D.N.J. Sept. 29, 2017) ("Both Google and YouTube are interactive

computer service[s]." (internal quotation marks omitted)); *Darnaa, LLC v. Google, Inc.*, 2016

---

[20] Courts routinely apply Section 230 to dismiss claims stemming from service providers'
decisions to post, edit, or remove third-party content.  *See, e.g.*, *Silver v. Quora, Inc.*, 666 F.
App'x 727, 730 (10th Cir. 2016); *Getachew v. Google, Inc.*, 491 F. App'x 923, 925–26 (10th Cir.
2012); *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018); *Klayman v. Zuckerberg*,
753 F.3d 1354, 1360 (D.C. Cir. 2014); *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 422
(1st Cir. 2007); *Zeran v. AOL*, 129 F.3d 327, 333 (4th Cir. 1997).

WL 6540452, at *7 (N.D. Cal. Nov. 2, 2016) (YouTube is an "interactive computer service");

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d

Cir. 2007) ("[T]here is no doubt that Google qualifies as an 'interactive computer

service' . . . .").

      As to the second and third elements, Section 230(c)(1) protects a publisher from liability

for exercising "its editorial and self-regulatory functions" as to third party content. *Ben Ezra*,

206 F.3d at 986. This is exactly what Plaintiff seeks to do here by holding Defendants liable for

decisions made regarding publishing content created by Plaintiff. At its core, the SAC alleges

claims of "censor[ship]," "remov[al]," "restrict[ion]," and "demonetiz[ation]" of Plaintiffs'

videos. *See, e.g.*, SAC ¶¶ 243, 245, 267. Those are "editorial and self-regulatory functions"

protected by the CDA. *Ben Ezra*, 206 F.3d at 986. At bottom, Plaintiffs' claims seek to hold

Defendants liable for decisions regarding whether and how to present third-party content on the

YouTube platform—including whether presentation of such third-party content would be

accompanied by advertisements—and thus inescapably seek to hold Defendants liable as the

publisher of content. Section 230 does not allow that result.


Date: December 4, 2019                    Respectfully submitted,


                                          */s/ Steven D. Zansberg*
                                          Steven D. Zansberg
                                          BALLARD SPAHR LLP
                                          1225 17th Street, Suite 2300
                                          Denver, CO 80202
                                          Telephone: (303) 376-2409
                                          Facsimile:  (303) 296-3956

                                          John E. Schmidtlein
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.

Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendants Google LLC and*
*YouTube, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2019, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorney of record:

Andrew Lee Martin, Esq.
ANDREW MARTIN & ASSOCIATES, P.L.L.C.
1685 S. Colorado Blvd., Suite 442
Denver, CO 80222

*Attorney for Plaintiff*

*s/ Steven D. Zansberg*