**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02387-WJM-KLM

BOB LEWIS,

      Plaintiff(s),

v.

GOOGLE, INC., a Delaware Corporation, and
YOUTUBE, LLC, a Delaware limited liability company,

      Defendant(s).

---

**PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS**

---

## I.      INTRODUCTION

All but one of the Defendants arguments contained in their dismissal motion appears to rely on their hope the Court didn't fully read or analyze the Plaintiff's Second Amended Complaint (SAC). This theory is conclusively demonstrated by virtue of the Defendants combination of their many mis-characterizations and/or reframes of the SAC's well-pled factual allegations as conclusory statements while at the same time pretending they don't exist.

Additionally, the Defendants legal and factual arguments rely on the Court reading and analyzing them in a vacuum, without considering how the dismissal motion internally contradicts itself multiple times. Further, the Defendants make multiple admissions against interest that are fatal to their view the Plaintiff has failed to state a claim, by virtue of the Defendant's multiple documented internal contradictions and/or arguing the merits of the Plaintiff's claims, rather than arguing no claim exists.

After reading and shepardizing this response (and the Defendants case citations contained in their dismissal motion) this Court will quickly realize the Defendants dismissal motion misapplies case law multiple times. In two instances, The Defendants erroneous and flawed legal analysis goes so far as citing California state court decisions, then pretend they're somehow controlling herein. Therefore, for the reasons stated below, this Court should deny Defendant's Motion to Dismiss on all counts except to the one the Plaintiff stipulates to dismissal (Unconscionable Contract).

As a side note, had the Defendants not been correct in that single instance, the Plaintiff would consider seeking attorneys fees, sanctions, and/or move to strike the entire dismissal motion.

## II.     BACKGROUND

Plaintiff incorporates the facts and/or allegations contained in the SAC as background herein by reference as **Exhibit 1**.

## III.     ARGUMENT

1.     **The Defendants Reframe The SAC's Factual Allegations as Conclusory Statements:**
The courts have long held that under both F.R.C.P. 12(b)(1) and 12(b)(6), court must accept complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in plaintiff's favor. *See **El-Khader v. Perryman***, 264 F. Supp. 2d 645 (N.D. Ill. 2003), aff'd, 366 F.3d 562 (7th Cir. 2004).

Further, in 2007, the U.S. Supreme Court held that while a complaint attacked by a Rule

12(b)(6) motion to dismiss <u>does not need detailed factual allegations</u>, a plaintiff's obligation to provide the "grounds"of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. (*See Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929,(2007) U.S. LEXIS 5901, 75 U.S.L.W. 4337, 2007-1 Trade Cas. (CCH)P75,709, 68 Fed. R. Serv. 3d (Callaghan) 661, 20 Fla. L. Weekly Fed.S 267, 41 Comm. Reg. (P & F) 567)

The Court went on to state that once a claim has been stated adequately, it may be supported by showing <u>any set of facts</u> consistent with the allegations in the complaint. Once a claim for relief has been stated, a plaintiff "<u>receives the benefit of imagination, so long as the</u> <u>**hypotheses** are consistent with the complaint</u>" *Id* @ 563

Then the court stated that Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations; <u>a well-pleaded complaint may proceed even</u> <u>if it appears that a recovery is very remote and unlikely</u>. *Id* @ 567.

With that in mind, the 11th Edition of the Black's Law Dictionary defines the term conclusory in pertinent part as:

> <u>Expressing a factual inference **without stating the underlying facts**</u> on <u>which the inference is based.</u>

In the case at bar, a review of the SAC shows it contains approximately 44 pages of factual allegations supported by 68 exhibits, which exceed 320 pages. Further, while the Defendants Motion claims statements in the SAC are conclusory, <u>the Defendants fail to</u> <u>specifically cite a single example where any of the numbered 183 factual allegations are</u>

<u>conclusory and/or devoid of factual support via exhibits</u>. In fact, the Defendants *de facto* admit the SAC is well-plead in their previously filed motion for a page limit extension, which by itself, is fatal to Defendant's repeated false assertion the SAC is not well-pled, contains no factual allegations, is baseless, and/or is based on conclusory statements alone.

These indisputable facts conclusively refute the Defendants false claims the SAC contains conclusory statements devoid underlying factual and/or support via exhibit. (**Exhibit 1**)


2.       <u>**Defendants Claim They Cannot Be Foreign/Domestic State Actors is Misguided:**</u>

While normally private parties cannot be held as state actors, there are, however, exceptional circumstances in which there is a constitutional right to protection. Such a right may arise if a "<u>special relationship</u>" exists between the state and the individual (*See **Sargi v. Kent City Bd. of Educ**.*, 70 F.3d 907, 910-13 (6th Cir. 1995))

In 1995, Tenth Circuit Court of Appeals articulated the joint-action test to determine when a private party can be considered a state actor when it stated: state action is also present if a private party is a "willful participant in joint action with the State or its agents." (*See **Gallagher v. Neil Young Freedom Concert***, 49 F.3d 1442 @ 1453, 1995 U.S. App. LEXIS 3983 *quoting*: ***Dennis v. Sparks***, 449 U.S. 24, 27 (1980)) <u>In the joint action tests, the courts examine whether state officials and private parties have **acted in concert** in effecting a particular deprivation of constitutional rights.</u> (*quoting: **Collins v. Womancare***, 878 F.2d 1145, 1154 (9th Cir. 1989), cert. denied, 493 U.S. 1056 (1990); ***Sims v. Jefferson Downs Racing Ass'n***, 778 F.2d 1068, 1076-80 (5th Cir. 1985)).

The *Gallagher* Court goes on to state: In applying this test, *some* courts have adopted the

requirements for establishing a conspiracy under **42 U.S.C §1983**. <u>These courts conclude that a requirement of the joint action charge is that both public and private actors share a common, unconstitutional goal.</u>" (*quoting*: ***Cunningham v. Seattle Ctr. for Mental Health, Inc***., 924 F.2d 106, 107 (9th Cir. 1991))

Then in *Jackson v. Curry County*, the New Mexico Federal District Court dealt with a case very similar to the case at bar regarding a private party acting in a state capacity. In that case, the Court found the private party's action constituted state action. The Court applied the nexus test from the *Gallagher* Court stating: In *Gallagher*, the Tenth Circuit explained that "under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'" ***Gallagher*** 49 F.3d at 1448. Specifically, under the nexus test, "a state normally can be held responsible for a private decision 'only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" ***Gallagher***, 49 F.3d at 1448. The "required inquiry" under the nexus test "<u>is fact-specific</u>." ***Gallagher***, 49 F.3d at 1448. (*See **Jackson v. Curry Cty**., 343 F. Supp. 3D 1103 @ 1110-1111, 2018 U.S. Dist. LEXIS 186955, 2018 WL 5669162*)

In 2017, the United States Supreme Court in *Lewis v. Clarke* considered individuals acting on behalf of foreign sovereigns on American soil as state actors. In that case, the state actor in question was an employee and a member of an Indian Tribe, but sued in his personal capacity. Like the current case at bar, the foreign sovereign was <u>never</u> named as a party. In that case, the Court stated that a state actor of a foreign sovereign could be held accountable, in their

personal capacity, for torts committed on U.S. soil.  (*See Lewis v. Clarke*, 137 S. Ct. 1285, 197

L. Ed. 2d 631, 2017 U.S. LEXIS 2796, 85 U.S.L.W. 4215, 101 Empl. Prac. Dec. (CCH) P45,785,

26 Fla. L. Weekly Fed. S 549, 2017 WL 1447161)

The Defendant's reliance on *Green v. AOL* and *Howard v. AOL* as legal support is

misguided (pgs 6-7). Neither case is dispositive and/or relevant herein because neither involved

the defendants jointly acting pursuant to foreign/domestic government agreements and/or laws.

Whereas in this case, the Plaintiff specifically alleges facts related to Defendants joint action

with multiple governments.

While the case at bar is one of first impression against a tech company, the case law

herein demonstrates the Defendants can be state actors of foreign sovereigns for purposes of 42

U.S.C §1983.

Further, the defendants argument relies on the false assumption that a case of first

impression is a failure to state a claim.

Contrary to the Defendant's many misrepresentations of the Plaintiff's complaint, the

SAC specifically and factually alleges the Defendants are state actors (as contemplated by the

*Gallagher* Court) and are violating the Plaintiff's and other U.S. citizens free speech rights under

the U.S. Constitution by virtue of enforcing foreign governments hate speech laws and/or

otherwise censoring/silencing American's free speech on the basis of hate speech, which doesn't

legally exist under U.S. Law (*see* argument five below). (**Exhibit 1** pgs. 6-25, allegations 19-79

– including exhibits)

To clarify, the SAC factually alleges the Defendants are state actors of the U.S.

government, acting in their individual capacity to censor the Plaintiff on that basis. (**Exhibit 1**,

pgs. 47-50, including exhibits) Thus, the Defendants, acting in their individual capacity is

precisely why no government is a named party herein.

3.     **The Defendants Misapply** *Price v. Socialist People's Libyan Arab Jamahiriya*, **294**

**F.3d 82, 96 (D.C. Cir. 2002):** This case named a foreign government defendant, didn't involve

conduct on U.S. soil, and involved the Foreign Sovereign Immunities Act (FSIA).

These facts are contrasted with the case at bar, by virtue that herein no foreign

government is a named party, all conduct is alleged to have occurred on U.S. soil, and doesn't

involved FSIA. Additionally, even if these facts were relevant, they're not controlling. Further,

this case contains is no dicta or holding that bars legal claims against individual private party

state actors who violate 42 U.S.C §1983 on U.S. soil.

4.     **YouTube.com and Google.com Are Places of Public Accommodation:**  The Plaintiff's

contention that the Defendant's websites are places of public accommodation for civil rights

purposes pursuant to 42 U.S.C. § 2000a is also <u>a case of first impression</u>.

In the case at bar, the Defendants are pleading this Court apply an archaic 20th century

and an onerously-literal analysis this issue by limiting 42 U.S.C. § 2000a's application to

physical places only.

Yet, the Defendants' case citations from other circuits aren't controlling here, but as a

case of first impression, they're also not dispositive and/or are irrelevant. For example, the

Defendants citation of *Noah v. AOL Time Warner Inc* is irrelevant because it involved internet

chat rooms devoid of commercial activity and/or ability to screen movies/TV shows/videos,

AOL chat rooms are not the type of commercial online theater the Defendants operate.  The

Defendants use *Noah v. AOL Time Warner Inc* to apply an apples to oranges misapplication in hopes the Court adopts their misinterpretation to avoid accountability for their national origin and other unlawful discrimination against the Plaintiff.

In the case at bar, the Plaintiff is requesting this Court apply the same level of 21st century conceptual analysis that the U.S. Supreme Court applied in *Packingham v. North Carolina*.

In that case, the *Packingham* Court extended constitutional free speech protections to social media websites such as YouTube.com when it stated: a fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential forum for the exercise of First Amendment rights. Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire. While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general, and social media in particular. *See* **Packingham v. North Carolina**, 137 S. Ct. 1730 at 1736, 198 L. Ed. 2D 273, (2017)

Thus, with the *Packingham* Court analysis in mind and considering the case at bar is a case of first impression, the Plaintiff requests this Court apply a two-prong test to determine whether the Defendants websites are places of public accommodation. First, analyze the Defendants conduct, then, look to Court precedent in other areas of law to see if websites have ever been found to be places of public accommodation.

In this context, the Plaintiff addresses the second prong first. While there's no controlling examples of Courts holding websites as places of public accommodation pursuant to 42 U.S.C. § 2000a, there's plenty of precedent determining websites as places of public accommodation under ADA. The Ninth Circuit earlier this year stated: no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation. We agree with the district court that the ADA applies to Domino's website and app. (*See* **Robles v. Domino's Pizza, LLC**, 913 F.3d 898, (2019))

The First Circuit's decision in *Carparts Distrib. Ctr. v. Auto. Wholesaler's Assoc.*, which held that "places of public accommodation" are **not** limited to "actual physical structures." (*See* **Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n**, 37 F.3d 12, at 19 (1994)). The First Circuit explained it would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result.

The Plaintiff contends the *Carparts'* Court "websites as public accommodation" reasoning applies with equal force in the case at bar to services purchased over the internet, such as video services sold and/or otherwise offered by the Defendants website, YouTube.com.

The Plaintiff contends that in a society where business is increasingly conducted online, excluding businesses that sell and/or otherwise offer services through internet websites as places of public accommodation runs afoul of the purpose of the 42 U.S.C. § 2000a and would severely frustrate Congress's intent that individuals have the ability to fully enjoy the goods, services,

privileges, and advantages available equal to other members of the general public free from unlawful discrimination.

Now let's address the first prong of the test.

The Defendants own conduct and/or contractual terms admit they're *de facto* places of public accommodation for purposes of civil rights protections as codified in 42 USC § 2000a. (*See* pg. 7 of Plaintiff's Affidavit, filed on 12/2/2019, attached and incorporated herein by reference as **Exhibit 2**). Further, the Defendant's dismissal motion doesn't dispute the SAC factually alleges YouTube.com offers closed captioning and other ADA accommodations for disabled viewers. (**Exhibit 1**)

The only factual difference between YouTube.com and a physical place of public accommodation is that YouTube.com's theater exists online, not at a brick and mortar location. In all other aspects, YouTube.com completely fits the definition of a theater under 42 U.S.C. § 2000a.

As a case of first impression, the Plaintiff contends this two prong test supports his view the Defendants operate a 21st Century online place of public accommodation and supports the claim YouTube.com can be held liable for discrimination under 42 U.S.C. § 2000a.

5.    **Policies That Allow Censorship and/or Punitive Actions Against Americans Based on Hate Speech Are National Origin Discrimination:** For this issue, the Plaintiff contends Colorado law is controlling here. C.R.S. 24-34-601(a) states:

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a

place of public accommodation

> or, directly or indirectly, to publish, circulate, issue, **display**, **post**, or mail any written, **electronic**, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry.

With this in mind, in 2015, the United States Supreme Court recognized that in some cases conduct cannot be divorced from status. This is so when the conduct is so closely correlated with the status that it is engaged in exclusively or predominantly by persons who have that particular status. (*See Craig v. Masterpiece Cakeshop, Inc.*, 2015 COA 115, 370 P.3d 272, rev'd on other grounds sub nom. *Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm'n*, -- U.S. --, 138 S. Ct. 1719, 201 L. Ed. 2d 35 (2018)).

In this context, the U.S. Supreme Court has repeatedly and consistently ruled hate speech is legally protected free speech under the First Amendment. In 2017, The Supreme Court unanimously reaffirmed this when it held speech may not be banned on the ground that it expresses ideas that offend. (*See Matal v. Tam*, 137 S. Ct. 1744, 198 L. Ed. 2d 366, 2017 U.S. LEXIS 3872, 122 U.S.P.Q.2D (BNA) 1757, 85 U.S.L.W. 4389, 45 Media L. Rep. 1849, 26 Fla. L. Weekly Fed. S 686, 2017 WL 2621315)

Free speech principles, codified in the U.S. Constitution and many federal/state laws are indisputably core and inseparable foundations of the U.S. government, culture, and way of life. Truly, free speech and opposition to hate speech censorship is uniquely and inseparably ingrained in the American identity and what it means to be an American citizen as much as baseball and apple pie.

Thus, the Defendants, as a place of public accommodation (YouTube.com) by posting, emailing, and/or enforcing policies that allow punitive action against the Plaintiff on the basis of "hate speech" constitutes unlawful national origin discrimination against him as an American citizen under both Colorado and U.S. federal law.

6.   **Defendants Dismissal Motion Stipulates Plaintiff's Standing to Challenge the CDA:**
While the Defendants are correct the Plaintiff's required to show an adverse impact to have standing to challenge the CDA, their motion (pgs 4-5) admits to the SAC's factual allegations that the Defendants censored, removed and/or demonetized the Plaintiff's videos, confirming the Defendant's conduct creates Plaintiff's standing under the adverse impact theory. These admissions and/or confirmations are fatal to their view the Plaintiff lacks standing to challenge the CDA.

This is reinforced by the Defendants use of the CDA as a liability defense for their unconstitutional, discriminatory, and otherwise tortious actions against the Plaintiff on page 23 of their dismissal motion.

Additionally, the SAC includes many factual allegations, supported by exhibits, that the Defendants conduct adversely impacted him that conclusively establish standing to constitutionally challenge the liability protections in the CDA. (**Exhibit 1**, pgs 32-43)

7.   **SAC Pleads All Necessary Elements of Fraud:** In 2013, The Colorado Supreme Court stated that in order prevail on a fraud claim the Plaintiff must establish five elements: (1) the defendant made a false representation of a material fact; (2) the one making the representation knew it was false; (3) the person to whom the representation was made was ignorant of the

falsity; (4) the representation was made with the intention that it be acted upon; and (5) the reliance resulted in damage to the plaintiff. (*See **Bristol Bay Prods., LLC v. Lampack,*** 2013 CO 60, 312 P.3d 1155, at 1160 (Colo. 2013))

In the case at bar, one example of the Defendants fraud is as follows: Defendants claim on the YouTube "About" web page they support freedom of speech. Further, Defendants repeatedly publicly proclaim they support American values and laws, including the American principal of freedom of speech. The Defendants' CEO, Sundar Pichai even testified to this under oath before the U.S. Congress. (element 1)

Yet, Defendants knew these statements were false because they actively enforce foreign "hate speech" and/or other censorship laws against U.S. citizens on behalf of foreign governments. (element 2) As a result of this active concealment, the Plaintiff was ignorant of Defendants' pervasively intertwined agency relationships with foreign governments (element 3). Further, Defendants made these false representations with the intention of the Plaintiff, ignorantly acting upon them (element 4). As a direct result of Defendants' fraud by omission, the Plaintiff's channel was demonetized, algorithm censored, had videos removed, had subscribers removed, and was otherwise concealed and/or censored causing ongoing potentially irreparable financial, reputation, and brand damage that continues today (element 5). (*See* **Exhibit 1**)

8. **Defendants General Denials of the SAC's Factual Allegations As Conclusory Does Not Constitute Failure To State A Claim Under Fifth Cause of Action:** The Defendant's argument herein presents triable issues and/or otherwise argue against the Plaintiff's claims on the merits, they are not arguments that support a failure to state a claim.

Further, the Defendants fraud and intentional discrimination as described herein and in

the SAC demonstrate a cause of action for Breach of Implied Covenant of Good Faith and Fair

Dealing.


9.      **Plaintiff Stipulates Unconscionable Contract is Not A Viable Cause of Action:** While

the Plaintiff adequately pleads the Defendants contracts/terms of service are unconscionable, the

Plaintiff stipulates the Defendants are correct that this is not a cause of action.

The Defendants argument on this issue appears to be the only one contained in their

Motion with any semblance of merit.


10.     **Plaintiff as a Dual Role Consumer/Competitor has Validly Pled Landham Act**

**Claims:** Contrary to the Defendants false assertions, Plaintiff's SAC pleads factual allegations

that the Defendants falsely interfere with advertisement of the Plaintiff's channel by employing

Algorithm other forms of technological censorship and/ or concealment to conceal Plaintiff's

channel from any perspective audience.

The Plaintiff stipulates to the Defendant's assertion he's a consumer. However, the

Plaintiff, by virtue of being a video producer who publishes videos on YouTube.com's website

and other websites, is also a competitor, by virtue of both he and YouTube.com creating,

publishing and advertising their videos. To be clear, the Plaintiff's status is that of dual

role/capacity, both consumer and competitor. These designations aren't mutually exclusive.

The Defendant's reliance on *Prager Univ. v. Google LLC,* is both misguided and not

controlling, since the case at bar isn't located in California and the *Prager* Court never addressed

dual role plaintiffs. Further, *Lexmark* is also irrelevant, for the same reasons.

11.      **The Defendants Challenge to the Tortious Interference with Economic Advantage Claim Applies the Incorrect Legal Standard:** The Defendants position herein erroneously cites California state cases as somehow controlling in a federal action far removed from the State of California (***Crown Imps., LLC v. Superior Court***, 168 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2014) - California State Court of Appeals and ***Korea Supply Co.v. Lockheed Martin Corp.***, 63 P.3d 937, 957 (Cal. 2003) - California State Supreme Court).

These erroneous and obviously irrelevant case citations and all arguments based on them are not only completely without merit under Colorado law and this forum, they appear to be boiler plate language lifted from another California action.

12.      **Plaintiff is Entitled to Declaratory Relief:** Despite the Defendants desperate attempt to persuade this Court to agree that their efforts to obfuscate and reframe contested and triable issues of fact as failures to state a claim, the Plaintiff is entitled to declaratory judgment herein.

13.      **Defendants Cannot Use a CDA defense because it's Unconstitutional on It's Face and/or "As Applied" to the Plaintiff:** The First Amendment of the United States Constitution states in pertinent part: "Congress shall make no law… ...abridging the freedom of speech, or of the press."

Yet, that's exactly what Section 230 of the Communications Decency Act does.

This is a well-settled issue: In 1965, the U.S. Supreme Court stated a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at

prejudices and preconceptions and have profound unsettling effects as it presses for acceptance

of an idea. That is why freedom of speech is protected against censorship or punishment. There

is no room under our Constitution for a more restrictive view. (*See* **Cox v. Louisiana**, 379 U.S.

536 at 551-552, 85 S. Ct. 453, 13 L. Ed. 2D 471 (1965))

   Back in 2000 the U.S. Supreme Court stated: Laws designed or intended to suppress or

restrict expression of specific speakers contradict basic principles of Constitution's First

Amendment. (*See* ***United States v. Playboy Entm't Group***, 529 U.S. 803 at 812, 120 S. Ct. 1878,

146 L. Ed. 2d 865, (2000))

   In 2017, the U.S. Supreme Court extended free speech protections to social media

platforms such as those owned by the Defendants. The Court stated: "A fundamental principle of

the First Amendment is that all persons have access to places where they can speak and listen,

and then, after reflection, speak and listen once more. The Court has sought to protect the right to

speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential

forum for the exercise of First Amendment rights. Even in the modern era, these places are still

essential venues for public gatherings to celebrate some views, to protest others, or simply to

learn and inquire. While in the past there may have been difficulty in identifying the most

important places (in a spatial sense) for the exchange of views, today the answer is clear. It is

cyberspace—the "vast democratic forums of the Internet" in general, and social media in

particular. (*See* ***Packingham v. North Carolina***, 137 S. Ct. 1730 at 1736, 198 L. Ed. 2D 273,

(2017))

   Yet, 47 U.S.C. § 230(c) states in pertinent part:

      "No provider or user of an interactive computer service shall be held liable
      on account of any action voluntarily taken in good faith to restrict access to

or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, **whether or not such material is constitutionally protected**…"

In the case at bar and elsewhere the Defendants and other big tech companies have a well-established history of misusing Section 230 as a shield to avoid accountability from liability for unlawful discrimination by virtue of chilling Americans' first amendment free speech rights, individually and on behalf of foreign governments. (*See* **Exhibit 1**)

On this subject, it's well-settled that the First Amendment of the U.S. Constitution and multiple United States Supreme Courts over a half a century, have repeatedly and consistently held that any law that suppresses free speech violates the U.S. Constitution.

Thus, 47 U.S.C. § 230(c) is unconstitutional either facially and/or as applied, to the Plaintiff, by virtue of enabling the Defendants to silence the Plaintiff's constitutionally protected free speech on their social media platform fraudulently on behalf of a foreign government without any civil liability or recourse.(*See* **Exhibit 1**)

14.   **Defendants Agreement With Plaintiff Confers a Legal Right Monetize His Channel:**

While the Defendants dismissal motion claims the Plaintiff has no right to monetize and/or ability to run advertisements on his channel, they admit in their motion they originally agreed to monetize the Plaintiff's YouTube channel. (Pgs 1-4)

This agreement, whether or not the Court determines the rest of the Defendants contractual terms are unconscionable, constitutes a valid legal contract between the Plaintiff and the Defendants and thus, at the very least conferring on the Plaintiff a legal right to monetize his channel pursuant to that contract.

Civil Rights law states under 42 U.S.C. § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

In application, the courts have stated an express cause of action for damages created by 42 U.S.C. § 1983 constitutes exclusive federal remedy for violation of rights guaranteed in 42 U.S.C. § 1981. (*See Arendale v. City of Memphis*, 519 F.3d 587, 2008 FED App. 0116P, 91 Empl. Prac. Dec. (CCH) P43150, 103 Fair Empl. Prac. Cas. (BNA) 40 (6th Cir. 2008), reh'g, en banc, denied, 2008 U.S. App. LEXIS 18430 (6th Cir. July 31, 2008))

Further, the Courts have stated because Congress neither explicitly created remedy against state actors under 42 U.S.C. § 1981(c), nor expressed its intent to overrule Supreme Court precedent finding no such remedy, an express cause of action for damages is created by 42 U.S.C. § 1983 and was exclusive remedy for violation of rights guaranteed in § 1981 by state actors. (*See McGovern v. City of Philadelphia*, 554 F.3d 114, 92 Empl. Prac. Dec. (CCH) P43481, 105 Fair Empl. Prac. Cas. (BNA) 481 (3d Cir. 2009), amended, 2009 U.S. App. LEXIS 2293 (3d Cir. Feb. 5, 2009)) Also, the Courts have stated that a cause of action based upon alleged conspiracy can be posited upon 42 U.S.C. § 1981 or 1983. (*See Mizell v. North Broward Hospital Dist.*, 427 F.2d 468 (5th Cir. 1970).

Additionally, the Courts have held that the even if the Plaintiff's SAC is defective by failing to claim a cause of action pursuant to 42 U.S.C. § 1981, he is allowed to amend his complaint to claim relief under 42 U.S.C. § 1983 (*See **Bolden v. City of Topeka***, 441 F.3d 1129 (10th Cir. 2006))

Finally, the courts have also stated that 42 U.S.C. § 1981 protects Mexican-Americans from discrimination. (*See **Sabala v. Western Gillette, Inc***., 371 F. Supp. 385, 7 Empl. Prac. Dec. (CCH) P9314, 7 Fair Empl. Prac. Cas. (BNA) 443 (S.D. Tex. 1974), aff'd in part and rev'd in part, 516 F.2d 1251, 10 Empl. Prac. Dec. (CCH) P10360, 11 Fair Empl. Prac. Cas. (BNA) 98 (5th Cir. 1975))

In the case at bar, not only is the Plaintiff a Mexican-American with brown skin, but the Defendants admit they canceled the Plaintiff's monetization contract.

The only disagreement between the parties, in the case at bar, is whether or not this cancellation was as the result of unlawful discrimination and/or retaliation against him, based on his national origin, skin color, religion, or any other unlawful civil rights discrimination.

15.     **The Defendants Legal Analysis and Factual Arguments Cannot Be Trusted:** In the case at bar, the Defendants, throughout their dismissal motion, misapply case law to the factual allegations contained in the Plaintiff's SAC. In two instances, the Defendants go so far as to erroneously cite obviously irrelevant California state court cases as somehow controlling in this federal action, filed and litigated nearly half a continent away.

Also, throughout the Defendant's dismissal motion they intentionally and falsely claim the Plaintiff's well and extensively pled SAC, which totals between 400 and 500 pages and is supported by 68 exhibits, somehow doesn't contain any factual allegations, is baseless, and/or

conclusory. The Defendants misconception here not only doesn't pass the straight face test…
it completely defies observable reality.

Finally, the Defendants dismissal motion and other papers filed in this case contain
multiple *de facto* admissions that are fatal to many of the dismissal motion's arguments.


## IV.    <u>CONCLUSION</u>

Therefore, for the reasons stated herein, the Plaintiff requests the Court deny the
Defendants motion to dismiss on all grounds, except the Plaintiff's stipulated position that the
Unconscionable claim is not a valid cause of action.




Respectfully submitted December 6, 2019.




                                        s/ Andrew Martin
                                        ***Andrew Martin***
                                        Andrew Martin & Associates
                                        1685 S. Colorado Blvd #S, 442
                                        Denver, CO 80222
                                        Telephone: 720-432-1205
                                        E-mail: drewmesq@aol.com
                                        Attorney for Plaintiff Bob Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, a true and correct copy of the foregoing Plaintiff's Response to The Defendants Motion To Dismiss was electronically filed with the clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Steven D. Zansberg
BALLARD SPAHR, LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: (303) 292-2400
Facsimile: (303) 296-3956
zansbergs@ballardspahr.com
Attorney for Defendants, Google LLC and YouTube LLC

John E. Schmidtlein
Williams & Connelly LLP
725 Twelfth St. NW
Washington D.C. 20005
Telephone: 202-434-5901
jschmidtlein@wc.com
Attorney for Defendants, Google LLC and YouTube LLC

*s/ Andrew Martin* _____